42 F.3d 1388
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Harmon Larry JONES, Plaintiff-Appellant,
v.
NORFOLK SOUTHERN RAILWAY COMPANY, Defendant-Appellee.
 No. 93-5999.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1994.
 
 Before: JONES and BATCHELDER, Circuit Judges, and BECKWITH, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Harmon Lee Jones appeals the district court's grant of Defendant Norfolk Southern Railway Company's Motion for Judgment Notwithstanding the Verdict on count II of his complaint under the Federal Employer's Liability Act. The district court found that there was not sufficient evidence that Jones' work-related injury on June 14, 1990 was foreseeable. Because we find that there was sufficient evidence of foreseeability, we REVERSE the decision of the district court and direct that court to reinstate the jury verdict in favor of Jones.
 
 I.
 
 2
 On June 14, 1990, Jones injured his shoulder while disassembling an engine protector relay ("EPR")[1] as part of his job as a machinist for Norfolk Southern Railway Company ("Norfolk Southern"). As part of the EPR disassembly, Jones had to loosen Allen head bolts using an Allen head socket wrench. Jones was injured when the socket wrench he was using became rounded and slipped out of a bolt that was hard to loosen,[2] causing him to fall back against some nearby machinery and injure his shoulder. In October 1990, Jones had arthroscopic surgery on his shoulder, and his shoulder is apparently permanently injured.
 
 
 3
 On the date of Jones' injury, his socket wrench had rounded twice, and he had ground the wrench. Subsequently, he was using this wrench when his injury occurred. Jones testified that he had ground the wrench because there were no other tools available at the time. J.A. at 78-79. He also testified that grinding was a common practice when replacement tools were unavailable. J.A. at 93. Jones testified that he knew that grinding the wrench was unsafe because it takes the temper off the metal which can cause the wrench to round when pressure is applied. J.A. at 89, 79.
 
 
 4
 Jones testified that prior to his injury he had talked to his general foreman, Bill Myers, about replacing the wrench, and that Myers had said that there was a supply problem with the Allen head socket wrenches. J.A. at 78-79. Testimony did not reveal the date of this exchange.
 
 
 5
 Myers, however, was on vacation on the date of Jones' injury. Myers testified that he did not recall Jones asking him for tools in the weeks prior to his vacation. He testified that he was aware that Allen head socket wrenches tend to wear out and that he tried to keep Allen socket wrenches on hand. J.A. at 99. Myers testified that the general procedure for ordering socket wrenches was that a mechanic would notify him that the mechanic needed tools, and he would order them. J.A. 98-100.
 
 
 6
 On the date of the injury, Jones did not tell his relief supervisor, Carl Christianson,[3] that his socket wrench had rounded. J.A. at 90 (Jones), 43 (Christianson). Jones testified that he did not try to get another socket wrench on the day of the injury because he knew there were not any available. He had already placed a request for new socket wrenches, which had not yet been answered, and he had been told that the reason he had not received new socket wrenches was because the supplier had quit. J.A. at 93.
 
 
 7
 In contrast, Myers testified that there was no problem with getting replacement sockets. J.A. at 100. Chattanooga Diesel Shop manager Tom Greenwood[4] testified that when a machinist needs a basic tool, he is supposed to tell his general foreman, and then the general foreman can either get him the tool right away, if there are more in the shop, or if not, the foreman can order the tool which will usually be delivered within a day or two. J.A. at 400-02.
 
 
 8
 On August 9, 1991, Jones filed the complaint in this action against his employer, Norfolk Southern, under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. Secs. 51-60 (1988). In two counts, Jones alleged that on two separate occasions, August 4, 1990 and June 14, 1990, Norfolk Southern had failed to provide him a reasonably safe place to work resulting in immediate and permanent injuries to Jones.
 
 
 9
 The action was tried before a jury beginning December 12, 1992, and on December 14, 1992, the jury returned a verdict for Jones, awarding him $180,000.00 in damages on count I and $100,000.00 in damages on count II.
 
 
 10
 On December 23, 1992, Norfolk Southern moved for a judgment notwithstanding the verdict, or in the alternative for a new trial. On June 11, 1993, the trial judge denied the motion with regard to count I, but granted the motion on count II because there was no evidence to support a finding that Jones' injury of June 14, 1990, was foreseeable. Jones then filed this appeal.
 
 II.
 
 11
 This court reviews a district court's grant of a motion for judgment notwithstanding the verdict using the same standard that the district court was required to apply in ruling on the motion. Phelps v. Yale Security, Inc., 986 F.2d 1020, 1023 (6th Cir.), cert. denied, 114 S.Ct. 175 (1993); Monette v. AM-7-7 Baking Co., 929 F.2d 276, 280 (6th Cir.1991). This court must determine whether there was sufficient evidence presented to raise a material issue of fact for the jury. Monette, 929 F.2d at 280; Ratliff v. Wellington Exempted Village Sch. Bd. of Educ., 820 F.2d 792, 795 (6th Cir.1987). There will be sufficient evidence unless, "when viewed in the light of those inferences most favorable to the non-movant, there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable persons could differ." Monette, 929 F.2d at 280. In determining whether there is sufficient evidence, this court "may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury." Ratliff, 820 F.2d at 795.
 
 
 12
 Additionally, the Supreme Court has held that courts are to give even greater deference to a jury's interpretation of the facts in FELA cases than in ordinary negligence cases. See Rogers v. Missouri Pac. R.R., 352 U.S. 500, 506-07 (noting that under FELA, "[j]udicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death"). This court has held that " '[o]nly when there is a complete absence of probative facts to support the [finding of employer negligence under FELA] does reversible error appear.' " Clark v. Kentucky & Ind. Term. R.R., 728 F.2d 307, 308 (6th Cir.1984) (quoting Lavender v. Kurn, 327 U.S. 645, 653 (1946)).
 
 III.
 
 13
 For a plaintiff to prevail on a claim under the FELA, he must prove the traditional common-law elements of negligence: duty, breach, foreseeability and causation. Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir.1990). The district court granted Norfolk Southern's J.N.O.V. motion on count II on the ground that "[n]o reasonable jury could have used the evidence presented at trial to find that defendant foresaw or should have foreseen the plaintiff's injury of June 14, 1990." J.A. at 34. The issue, then, of this appeal is whether, viewing the evidence in the light most favorable to Jones, there was any evidence of foreseeability to raise a question of fact for the jury.
 
 
 14
 The Supreme Court's decision in Gallick v. Baltimore & Ohio R.R., 372 U.S. 108 (1963) is the most instructive precedent on this issue. It illustrates both the expanse of the foreseeability concept and the deference to which jury verdicts are entitled in FELA cases. Plaintiff Gallick, a railroad employee, was working alongside a pool of stagnant water, which had existed for years and contained dead and decayed rats and pigeons. At trial, the evidence had established that the defendant railroad had long been aware of the fetid condition of the pool and the insects the pool attracted. Gallick, while working near the pool, was bitten by an insect. Subsequently, the bite became infected, and despite medical treatment, the infection spread, ultimately necessitating the amputation of both of Gallick's legs. At trial, the jury found for Gallick. On appeal the Ohio Court of Appeals reversed, and the Ohio Supreme Court refused further appellate review. The Supreme Court reversed the Ohio Court of Appeals, because the court found that there was sufficient evidence for the jury to return a verdict for Gallick. Specifically, with regard to the issue of foreseeability, the Court acknowledged that the trial court had appropriately instructed the jury that " 'defendant's duties are measured by what is reasonably foreseeable under like circumstances'--by what 'in the light of the facts then known, should or could reasonably have been anticipated.' " 372 U.S. at 118. The Court further explained that a valid finding of foreseeability did not require that a similar incident to the insect bite infection have occurred previously. Specifically, the Court stated that if the jury had determined that because "there had been no similar incidents at this pool in the past, the respondent had no specific 'reason' for anticipating a mishap or injury to petitioner," then that conclusion would have been "far too narrow a concept of foreseeable harm to negative negligence under the Federal Employers' Liability Act." 372 U.S. at 121.
 
 
 15
 In its order granting judgment notwithstanding the verdict, the district court made the following statement:
 
 
 16
 The Plaintiff reported he had a shortage of Allen head sockets. Further testimony by the Plaintiff shows he did not communicate to his foreman the socket wrench he was using was worn or the Allen head socket was worn and in a defective condition.
 
 
 17
 J.A. at 34. Similarly, in its order the district court also stated that "[p]laintiff's supervisors had no knowledge that he was using a worn allen head socket" and that "[t]he defendant did not know about the plaintiff's grinding of the allen head socket." J.A. at 33-34, 34.
 
 
 18
 In this case brought under FELA, the district court was not to substitute its verdict for the jury's unless there was a complete absence of probative fact to support the jury's finding of foreseeability. The district court's determination that there was no evidence of foreseeability is erroneous because it is premised on the view that Norfolk Southern had to actually know of Jones' actual use of the worn socket wrench. Gallick teaches rejection of such a narrow view of foreseeability. In this case we find that if Norfolk Southern knew or should have known that Jones would be likely to use a worn socket wrench, then Jones' injury was foreseeable. The evidence established that Norfolk Southern knew that Jones was low on Allen socket wrenches in the days before his injury, and that it knew of the common practice of grinding socket wrenches when there were no more socket wrenches available, and that it knew that such grinding weakens the temper of the metal making the wrench more susceptible to future rounding. Based on this evidence, the jury was entitled to find that Norfolk Southern knew or should have known that Jones was likely to use a worn socket wrench which was capable of causing injury. Thus, the jury verdict that Jones' injury of June 14, 1990 was foreseeable should stand.[5]
 
 IV.
 
 19
 Based on the foregoing, we REVERSE the decision of the district court with regard to count II, and REMAND this case with instructions that the court reinstate the jury verdict on that count, and that the court enter judgment on that verdict.
 
 
 
 *
 The Honorable Sandra S. Beckwith, United States District Court Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The EPR is a part of the locomotive engine that monitors the pressure in the crank case and balances the water pressure. It protects the engine when it senses a malfunction by shutting down the engine to prevent a cracked piston and serious engine damage
 
 
 [2]
 Allen head socket wrenches wear out depending on the frequency and severity of use. An Allen head socket wrench has a hexagonal-shaped instrument which is inserted into the hexagonal-shaped hole in the head of an Allen bolt. An Allen head socket wrench wears out by becoming rounded. When a wrench has rounded, it is possible to sharpen the edges of the worn wrench on a grinder to restore its hexagonal shape. Using a ground socket wrench can be unsafe because grinding can soften the metal, causing the wrench to round more easily during subsequent use
 
 
 [3]
 Christianson was filling in for Myers while he was on vacation
 
 
 [4]
 Chattanooga Diesel Shop is the shop where Jones works as a machinist for Norfolk Southern and where the injury occurred
 
 
 [5]
 We note that Norfolk Southern's argument that Jones failed to present sufficient evidence of foreseeability because he failed to show that his grinding of the socket wrench actually caused the wrench to become defective, and because there was "no evidence that any defects were ever discovered prior to plaintiff's injury that could be attributed to the grinding of tools," Norfolk S.Br. at 10, is without merit. The argument is contrary to the Supreme Court's holding in Gallick. In Gallick, the court rejected the notion that Gallick had to show that the insect that had bitten him actually emanated from the stagnant pool. 372 U.S. at 113-14. Under Gallick, Jones does not have to show that the grinding of the socket wrench actually made the wrench defective. Additionally, the Court in Gallick, as already discussed, rejected the notion that there needed to be a similar prior incident to establish the foreseeability of plaintiff's injury. Under Gallick, Jones does not have to show any prior injurious defective wrenches to substantiate foreseeability